Filed 7/1/13  Gonzalez v. Buffalo Inn CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| STEPHANIE GONZALEZ, | |
| Plaintiff and Respondent, | E052396 |
| v. | (Super.Ct.No. RCVRS081741) |
| BUFFALO INN, INC. et al., | **OPINION** |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Martin A. Hildreth, Judge.  (Retired judge of the San Bernardino Muni. Ct., West Valley Division, sitting under assignment by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed with directions.

Law Offices of Kersten & Associates, William C. Kersten and Brandon R. Creel for Defendants and Appellants.

Law Offices of Lisa L. Maki, Lisa L. Maki and Betty J. Boyd for Plaintiff and Respondent.

I

INTRODUCTION

Plaintiff Stephanie Gonzalez was employed by the Buffalo Inn restaurant.

Defendants Richard Rinard, Janna Hickler, and Buffalo Inn Route 66 Corporation

(collectively Buffalo) appeal from a postjudgment order, awarding plaintiff attorney's

fees in the amount of $254,615.50.[1]

Defendants appeal, arguing the attorney's fee award was an abuse of discretion.

We conclude there was no abuse of discretion and affirm.

II

FACTUAL AND PROCEDURAL BACKGROUND

We discussed the factual background of this case in a previous appeal, (*Gonzalez*

*v. Rinard* (Jan. 31, 2008, E041658) [nonpub. opn.]) (the default appeal). As described in

that opinion, plaintiff was the single mother of a mixed-race child. Plaintiff began dating

Forrest K. Rinard[2] in July 1995. Plaintiff lived with Forrest and worked at the Buffalo

Inn for two years between July 1999 and July 2001. Forrest was the owner and plaintiff

was the manager. Forrest drank alcohol at work and was abusive toward plaintiff in their

personal life and as his employee. He made racist comments and was violent toward her

child. He called her a "Nigger lover" and told her she was fired. He continued to employ

---

[1] After the briefs in this case were filed, a fourth defendant, Buffalo Inn, Inc., filed bankruptcy. Pursuant to our order of December 17, 2010, that defendant's appeal has been severed and is now proceeding under case No. E052396.

[2] Forrest K. Rinard is not a party to this appeal.

her until he beat her in the face with a mop. Plaintiff moved out of their house but still managed the Buffalo Inn. In July 2001, plaintiff dated another man and Forrest fired her again. Forrest threatened and harassed plaintiff. Forrest called plaintiff a thief, an embezzler, an extortionist, a liar, crazy, and incompetent. He failed to pay her wages and left a number of angry, threatening, and profane messages on her telephone. In 2003, Forrest transferred ownership of the Buffalo Inn to his brother, defendant Richard Rinard, who agreed to accept the liabilities of the business.

In July 2004, plaintiff sued defendants for alleged sexual harassment and discrimination, wrongful termination, and related causes of action.

In August 2006, the court entered a default judgment in the amount of $1.3 million against defendants. Between October 2006 and early 2008, defendants successfully pursued the default appeal, obtaining a reversal of the default judgment.

On February 11, 2009, plaintiff served defendants with an offer to compromise (Code Civ. Proc., § 998) in the sum of $95,000.

A jury trial began on March 2, 2009. On March 3, defendants accepted plaintiff's offer to compromise for $95,000, plus attorney's fees and costs.

Plaintiff submitted a proposed judgment, including fees of $262,268.50, costs of $38,974.27, and interest of $598. The court rejected the proposed judgment because "attorney's fees and costs were not determined. Interest was not included."

The court entered a judgment for $95,000 on May 21, 2009.

Plaintiff then filed a motion, pursuant to Government Code section 12965 and Labor Code section 218.5, seeking attorney's fees of $509,231. The court rejected

plaintiff's argument that she was entitled to a multiplier of 2.0 on the amount of fees. The court ordered actual fees of $254,615.50.

III

ANALYSIS

We review a trial court's determination of reasonable attorney fees under the abuse of discretion standard: "[T]here is no question our review must be highly deferential to the views of the trial court. [Citation.] As our high court has repeatedly stated, ""[t]he "experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"—meaning that it abused its discretion.""' [Citations.]" (*Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 777; *Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 25-26 (*Lealao*).)

The trial court's award of fees must be reasonable: "In determining the amount of reasonable attorney fees to be awarded under a statutory attorney fees provision, the trial court begins by calculating the 'lodestar' amount. (*Ketchum* [*v. Moses* (2001) 24 Cal.4th 1122,] 1131; *Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 448-449 [78 Cal.Rptr.2d 913] (*Meister*).) The 'lodestar' is 'the number of hours reasonably expended multiplied by the reasonable hourly rate.' (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) To determine the reasonable hourly rate, the court looks to the 'hourly rate . . . prevailing in the community for similar work.' (*Ibid.*) Using the lodestar as the basis for the attorney fee award 'anchors the trial court's

4

analysis to an objective determination of the value of an attorney's services, ensuring that the amount awarded is not arbitrary. [Citation.]' (*Ibid*.)" (*Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1393-1394 (*Bernardi*).)

The lodestar may also be adjusted: "'Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier" to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.'" *(Lealao, supra,* 82 Cal.App.4th at p. 26.) 'The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.' (*Ketchum v. Moses* [, *supra,* 24 Cal.4th at p.] 1132.)" (*Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 833.)

Defendants contend the amount of fees awarded was unreasonable and an abuse of discretion for several reasons. Defendants argue plaintiff was not entitled to any fees incurred in connection with the default judgment, including fees incurred while opposing defendants' successful default appeal. Defendants also challenge specific billings related to discovery conducted at the trial level. Additionally, defendants protest the amount of hourly fees charged by plaintiff's attorneys. Finally, defendants assert plaintiff obtained a limited degree of success, engaged in vexatious litigation tactics, and made an improper request for costs—all of which supply other reasons to reduce the fee award.

A. *The Default Judgment and Appeal*

Defendants calculate the amount of fees related to the default judgment and default appeal as being $103,250 for 252.43 hours of work between September 2005 and March 2008. The record, however, shows the amount of fees incurred for the appeal was only $32,764 between April 2007 and February 2008. Notwithstanding this discrepancy in amounts, we reject defendants' claims about the unreasonableness of these fees.

We agree with defendants' assertion that "reasonable" fees are "necessary" fees: "[T]he predicate of *any* attorney fee award . . . is the necessity and usefulness of the conduct for which compensation is sought." (*Thayer v. Wells Fargo Bank, supra,* 92 Cal.App.4th at p. 846; *Hadley v. Krepel* (1985) 167 Cal.App.3d 677, 682-684.) Defendants further argue that plaintiff employed a questionable litigation strategy by pursuing a default judgment against defendants that was later reversed on appeal. The record, however, does not demonstrate that plaintiff's efforts to litigate her case against defendants, including obtaining a default judgment, were unnecessary or unreasonable. Defendants' litigation conduct, as we described it in our previous opinion, contributed a great deal to the difficulties encountered by plaintiff in pursuing her claims. For more than a year, defendants switched attorneys, failed to make many court appearances, and did not cooperate. Although defendants secured relief from the default judgment, plaintiff was entirely justified in trying to defend the judgment on appeal. For the foregoing reasons, we conclude the fees were necessarily and reasonably incurred for the litigation and appeal involving the default judgment.

Nor, if the litigation is ultimately successful, is a party precluded from recovering

fees for interim appellate work, as defendants urge. In some circumstances, a party may not recover for fees incurred in an unsuccessful interim proceeding which the party initiated. In *Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 424 (*Harman*), the appellate court determined the trial court had properly deleted the hours spent on an unsuccessful petition for rehearing of a prior appeal. But a different situation occurs, as here, where plaintiff had to respond to an interim appeal brought by defendants. It is uncontestable that it was both necessary and useful for plaintiff to participate in the default appeal.

In our previous opinion, we ordered the parties to bear their own costs on appeal. (*Gonzalez v. Rinard, supra,* E041658, p. 12.) That order does not, as proposed by defendants, constitute an order that each party bear its own attorney fees on appeal. Appellate attorney fees are not recoverable as appellate costs under California Rules of Court, rule 8.278(d)(2).

B. *Specific Billings*

Defendants object to the award of attorney's fees in the amount of $3,315 incurred for review of two other related lawsuits and depositions, which involved defendants and Forrest Rinard. Defendants also object to $1,686.25 in fees for a discovery motion that was withdrawn and to billings of $9,383.50 related to plaintiff's deposition.

As we have already noted, an experienced trial judge is the best judge of the value of professional services rendered in court unless we are convinced the judge was clearly wrong and abused his or her discretion. (*Children's Hospital & Medical Center v. Bontá, supra,* 97 Cal.App.4th at p. 782.) The trial court considered defendants' arguments

7

below and rejected them, as do we now.

C. *Other Factors: Hourly Rate, Degree of Success, Litigation Conduct*

Plaintiff's attorneys charged an hourly rate ranging between $350 and $450. Plaintiff offered evidence that a reasonable hourly rate was between $400 and $675. Defendants claim a more reasonable hourly rate is $250.

The trial court did not award the 2.0 multiplier sought by plaintiff, which would have doubled the actual fees requested. But the court did expressly find plaintiff's claimed hourly rate "is within the customary range for attorneys of her caliber and experience" and "defendants' counsels' self-serving declarations respecting prevailing rates are considerably less persuasive." Again, the trial judge assesses the value of legal services. The amount of a fee awarded will not be "set aside on appeal absent a showing that it is manifestly excessive in the circumstances. (*PLCM Group v. Drexler, supra*, 22 Cal.4th 1084, 1095.) Such a showing has not been made in this case." (*Children's Hospital & Medical Center v. Bontá, supra,* 97 Cal.App.4th at p. 782.)

Defendants further maintain that plaintiff's fee award should be reduced, presumably because she settled her claims against these defendants for only $95,000. In *Harman, supra,* 158 Cal.App.4th at page 421, we explained: "'[W]e do not reflexively reduce fee awards whenever damages fail to meet a plaintiff's expectations in proportion to the damages' shortfall.' (*Nigh v. Koons Buick Pontiac GMC, Inc.* (4th Cir. 2007) 478 F.3d 183, 190.)" We decline to adopt defendants' contention: "[W]hile the degree of the plaintiff's success in obtaining the objectives of the litigation is a factor that the trial court may consider in determining an award of reasonable attorney fees under a fee

statute (*Meister, supra*, 67 Cal.App.4th at p. 455; *PLCM Group, Inc. v. Drexler, supra*, 22 Cal.4th at p. 1096) . . . we determine that there is no requirement that the trial court make an award of attorney fees in an amount that is commensurate with or in proportion to the degree of success in the . . . litigation." (*Bernardi, supra,* 167 Cal.App.4th at p. 1398.)

Finally, we reject defendants' characterization of plaintiff's litigation conduct as "vexatious." Both plaintiff and defendants have delayed and prolonged the subject litigation. But we do not perceive circumstances justifying a reduction of plaintiff's fees based on the application of equitable principles. (*Enpalm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 774-775.)

IV

DISPOSITION

We affirm the judgment and order plaintiff as the prevailing party to recover her costs on appeal. Plaintiff's request for attorney's fees on appeal is remanded to the trial court.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI_____
J.

We concur:

HOLLENHORST_____
Acting P. J.

McKINSTER_____
J.

9