[No. H031648. Sixth Dist. Sept. 30, 2008.]

PATRICIA BERNARDI et al., Plaintiffs and Respondents, v.
COUNTY OF MONTEREY, Defendant and Appellant.

COUNSEL

Charles J. McKee, County Counsel, and Wendy Strimling, Deputy County Counsel, for Defendant and Appellant.

Law Offices of Michael W. Stamp, Michael W. Stamp; Law Offices of Joel Franklin and Joel Franklin for Plaintiffs and Respondents.

OPINION

**BAMATTRE-MANOUKIAN, J.—**

## I. INTRODUCTION

Respondent Patricia Bernardi and the Open Monterey Project (collectively, Bernardi) filed a petition to enforce the California Public Records Act (CPRA) (Gov. Code, § 6250 et seq.),[1] in which they sought public records from appellant County of Monterey (the County) relating to a pending subdivision proposal known as the September Ranch project. After more than a year of litigation, the trial court adopted the recommendations of the special master and ordered the County to produce some of the records that the County had previously refused to produce. Thereafter, Bernardi filed a motion for an order awarding attorney fees pursuant to section 6259, subdivision (d), the attorney fees provision of the CPRA. The trial court granted the motion and, in its order of March 29, 2007, awarded Bernardi total attorney fees of $244,287.50.

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

On appeal, the County argues that the trial court abused its discretion in awarding an unreasonable amount of attorney fees to Bernardi. According to the County, the attorney fees award is excessive because it is not commensurate with Bernardi's partial success in obtaining public records. For the reasons stated below, we conclude that the trial court did not abuse its discretion and therefore we will affirm the order awarding attorney fees.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The September Ranch Project*

Since Bernardi's CPRA petition sought public records relating to the September Ranch project, we will begin with a brief overview of that project and related litigation.

In 1998, the County Board of Supervisors certified the environmental impact report (EIR) for a subdivision proposal known as the September Ranch project. The certification of the EIR was challenged by the Save Our Peninsula Committee and the Sierra Club in petitions for administrative mandamus filed in the superior court. The court entered judgment in favor of the petitioners after determining that the EIR was not legally adequate under CEQA,[2] and ordered the County Board of Supervisors to vacate certification of the EIR and to prepare and circulate an EIR that was legally adequate with respect to specified water and traffic issues.

The judgment was appealed by the September Ranch Partners, who were the project applicants. This court concluded in *Save Our Peninsula Committee v. Monterey County Bd. of Supervisors* (2001) 87 Cal.App.4th 99 [104 Cal.Rptr.2d 326] that the EIR was adequate with respect to traffic issues but inadequate in its treatment of several critical water issues.[3] For that reason, we reversed the judgment in part and affirmed it in part, and directed the superior court to issue a new writ of mandate vacating the certification of the EIR for the September Ranch project. We further directed the superior court to order the County Board of Supervisors not to take any action to approve the September Ranch project without regard to the water issues discussed in the opinion. In so ruling, we observed that an atmosphere of public concern existed with respect to the water shortage in the Carmel Valley location of the September Ranch project.

---

[2] California Environmental Quality Act (CEQA), Public Resources Code section 21000 et seq.

[3] Our summary of the pertinent factual and procedural background includes some information that we have taken from our prior decision in *Save Our Peninsula Committee v. Monterey County Bd. of Supervisors, supra,* 87 Cal.App.4th 99.

B. *The CPRA Petition*

On March 24, 2005, Bernardi filed a verified petition to enforce the CPRA in the trial court. Bernardi sought inspection of all County records relating to the September Ranch project, which she described as "one of the most controversial and important [subdivision] proposals made in the past 20 years for Carmel Valley." Bernardi claimed that the County's 1998 approval of the September Ranch project "was based in substantial part upon ghostwritten and forged documents . . . ." She further claimed that "[o]ther improper and controversial aspects of the project included unauthorized contacts by the developer with the County's [EIR] consultant and misrepresentations about key environmental factors, including historic water use on the property."

The petition also detailed Bernardi's prior CPRA requests, in which she sought to inspect all County records relating to the September Ranch project that the County had "used or received" on or after April 15, 2001. Bernardi made her first request on January 3, 2005. The County produced records for inspection on January 10, 2005, but informed Bernardi that some documents were being withheld due to claims of privilege. On January 11, 2005, the County provided a list of 40 documents that had been withheld. After the parties communicated regarding the withheld documents, the County produced additional documents between January 24, 2005, and early February 2005.

However, the parties continued to dispute some of Bernardi's public records requests regarding the September Ranch project. On March 14, 2005, Bernardi sent a letter to the County demanding compliance and setting a deadline of March 21, 2005. Bernardi was not satisfied with the County's response to her March 14, 2005 letter and on March 23, 2005, she sent another letter to the County regarding the County's lack of compliance, in which she identified the records that the County had failed to produce. The County's response to Bernardi's March 23, 2005 letter was also inadequate, according to Bernardi, and as a result she filed the CPRA petition seeking documents relating to the September Ranch project.

The documents relating to the September Ranch project that Bernardi sought to inspect by way of her CPRA petition expressly included, among others, (1) County environmental health files; (2) County records pertaining to the "myth that there is a separate 'September Ranch Aquifer' "; (3) records discussing assumptions made by the County's EIR consultant; (4) the County's instructions to the EIR consultant; (5) "information about the project application, in light of the developer's public statement on March 16, 2005, that the 'old ranch house . . . is slated for demolition' "; (6) documents showing the "increase in units at the project since the 1998 consideration of the project";

(7) "any analysis of why the processing of the project is not prohibited under the existing County moratorium on subdivisions in Carmel Valley"; (8) "documents that show the identity of the author of the [draft revised EIR] section relating to water"; and (9) documents showing which persons had access to the "administrative draft of the EIR."

Additionally, Bernardi sought inspection of records showing the developer's contacts with the County's EIR consultants and other County agents. She stated, "The County claims that if such records have not been sent directly to the County, the County need not allow access to the records. In essence, the County claims that it may deny access to public records by keeping the records off-site and in the hands of the County's consultants." She further asserted that "[a]llowing the County to determine that documents related to the preparation of the EIR are to be kept secret would shield the County from public accountability . . . ."

In its answer to the petition, the County denied many of Bernardi's allegations and asserted that other allegations were "vague, ambiguous, and inflammatory and mischaracterize [Bernardi's] Public Record Act requests . . . ." The County also stated that Bernardi had previously requested and received copies of 2,230 pages of documents from the planning department's file. The affirmative defenses that the County asserted included, among others, the exemption for documents protected by the attorney-client privilege (§ 6254, subd. (k)); the exemption for preliminary notes and drafts not kept in the ordinary course of business (§ 6254, subd. (a)); and the catchall exemption for documents where the public interest in disclosure is outweighed by the public interest in nondisclosure (§ 6255, subd. (a)). The County further asserted that it had made timely, good faith responses to Bernardi's requests, but Bernardi had "failed to engage in constructive dialogue with the County in order to clarify the scope of their requests and the scope of the County's objections and to agree upon a realistic time frame within which County could provide any remaining records within the proper scope of [Bernardi's] request."

## C. *Further Writ Proceedings*

While Bernardi's writ petition was pending in the trial court, the parties each filed discovery motions related to Bernardi's requests for inspection of September Ranch documents. On April 14, 2005, Bernardi filed a motion for an order requiring the County to prepare an index of withheld documents. Bernardi argued that the County had an obligation to prepare an index similar to a privilege log that would list the records responsive to her CPRA requests that the County had withheld and the exemption claimed for each record. Bernardi subsequently asked the trial court to drop the motion from the calendar because the motion was moot.

Bernardi also noticed the deposition of Jason Brandman, the primary representative of Michael Brandman Associates (MBA), the County's EIR consultant on the September Ranch project. The County filed a motion on June 2, 2005, for an order staying the deposition of Jason Brandman and quashing the deposition subpoenas for the production of business records that had been served on MBA. The County argued that discovery of the private records of a third party consultant was not authorized in a CPRA lawsuit.

On July 12, 2005, the trial court issued its order after submission in which the court quashed the deposition subpoenas for MBA's records, but ruled that the County had an obligation to produce records "in its constructive possession," including records retained by MBA that fell within the definition of public records. The trial court also denied the motion to stay the deposition of Jason Brandman, ruling that Bernardi could take his deposition "for the limited purpose of clarifying which documents held by MBA have been 'prepared, owned, used, or retained' in connection with the September Ranch project."

The parties subsequently submitted status reports regarding their compliance with the July 12, 2005 discovery order. Bernardi claimed in her August 22, 2005 status report that, although the deposition of Jason Brandman had been set, the County had failed to produce records retained by MBA as required by the July 12, 2005 order. Thereafter, the County requested that the trial court set a case management conference to clarify the scope of the deposition and whether the County was obligated to produce the MBA records in advance of the deposition.

A case management conference was held on September 30, 2005. At that time the parties agreed that the Honorable Christopher Cottle (ret.), would be appointed as discovery referee.

### D. *Proceedings Before the Special Master*

On November 21, 2005, an order was filed appointing Justice Cottle as special master. The order stated that the purpose of the special master's appointment was to make a recommendation to the trial court on all of the issues in the case related to discovery and the application of the CPRA, including the following issues: (1) which, if any, of the records held by MBA relating to the September Ranch land use application were to be provided to Bernardi; (2) which, if any, of the records withheld by the County were to be provided to Bernardi; (3) whether certain County and MBA records were exempt from disclosure under the attorney-client privilege and the work product doctrine; (4) whether the County was required to obtain records that it had lawfully not retained from other sources; (5) whether Jason Brandman

could be compelled to answer deposition questions that he had been instructed not to answer; and (6) any other issues deemed necessary by the special master.

The parties and MBA submitted briefs[4] and the special master held hearings on November 21, 2005, December 21, 2005, and May 19, 2006. After the hearings, the County submitted a log of MBA records that the County had withheld and both parties submitted supplemental briefs regarding the withheld documents. The special master also reviewed six binders of records that the County had provided for in camera review. The binders included County records previously disclosed to Bernardi, County records that had been withheld pursuant to claims of privilege or statutory exemption, and MBA records that at one time had been in the possession of the County before being deleted or discarded. The MBA records included previously produced records, records that had been withheld without any claims of privilege or exemption, and records that had been withheld pursuant to claims of privilege or statutory exemption.

On July 14, 2006, the special master issued his report and recommendations. First, the special master resolved the dispute concerning Bernardi's claim that MBA was a County agent and therefore all records prepared, owned, used or retained by MBA in connection with the September Ranch project were public records. Interpreting the trial court's order of July 12, 2005, the special master determined that the County was required to produce those "records in the possession of MBA as County's agent which were prepared, owned, used or retained by County and which County actually possessed and now effectively and constructively possesses, although the records when earlier possessed by County were deleted or discarded." The special master also noted that Bernardi had failed to cite any decisions that extended the scope of the CPRA to records held by a private party.

Second, the special master considered Bernardi's claim that the County's outside legal counsel, the law firm of Downey Brand, did nonlegal work on the draft EIR that was not subject to the attorney-client privilege. The special master determined that the "evidence and records fail to support this argument that Downey Brand was other than a legal advisor. [Bernardi] suspect[s] attorneys for the [September Ranch] Project may have seen copies of circulating attorney-client e-mails resulting in waiver of the attorney-client privilege. Instead, the records show privileged e-mails were circulated only among those who were involved to further the interest of the County, and not to the [September Ranch] Project applicant or any others."

---

[4] On March 18, 2008, this court denied the County's request to take judicial notice of briefs and pleadings that the County and MBA had submitted to the special master but did not file in the trial court.

Third, having performed his in camera review, the special master recommended that "all MBA records contained in the binders and not subject to claims of privilege or exemptions be produced to [Bernardi]." Finally, the special master stated his recommendations as to each disputed record, which were contained in the binders numbered 1, 4 and 6. The special master recommended the County's claim of attorney-client privilege be sustained for many, but not all, of the records for which the privilege was asserted. He also determined that some of the documents were nonresponsive and one page was properly withheld on the ground of personal privacy.

### E. The Trial Court's Order

On August 2, 2006, Bernardi filed a motion for an order confirming and adopting the recommendations of the special master. She asserted that the special master had reviewed 2,810 pages of records in camera and had upheld the County's claims of privilege or exemption for approximately 700 of the 800 pages withheld on those grounds. Noting that the special master's "recommendations appeared to be thorough, thoughtful, and well-presented," Bernardi requested that his recommendations be confirmed and adopted by the court, and that the County be ordered to produce the public records "forthwith."

In its written response to Bernardi's motion, the County also requested that the trial court adopt the special master's recommendations. The County stated that it was willing to produce the documents that the special master had determined were not exempt from disclosure "upon appropriate court order."

On September 5, 2006, the trial court issued its order confirming and adopting the recommendations stated in the special master's report of July 14, 2006. The court also ordered the County to produce the nonexempt public records to Bernardi by August 31, 2006.

### F. The Attorney Fees Award

#### 1. The Motion for an Order Awarding Attorney Fees

After the trial court issued its order adopting the special master's recommendations and ordering the County to produce public records, Bernardi filed a motion for an order awarding attorney fees and costs. In the motion, filed January 5, 2007, Bernardi sought a mandatory award of attorney fees and costs on the ground that she was the prevailing party in CPRA litigation,

pursuant to section 6259, subdivision (d).[5] According to Bernardi, as a result of filing her CPRA petition she achieved the production of approximately 3,000 pages of previously withheld public records.

The attorney fees requested by Bernardi were based on a "lodestar" amount of $194,810, which was calculated by multiplying the number of attorney, law student and paralegal hours by the hourly market rate for each of their services. As stated in the declaration of Bernardi's attorney, Michael Stamp, the lodestar amount included 350 hours of his time at an hourly rate of $375; 36 associate attorney hours at an hourly rate of $225; 268 land use planner/certified law student hours at an hourly rate of $195; and 32 paralegal hours at an hourly rate of $100.

Bernardi further requested that the lodestar amount of $194,810 be enhanced by a multiplier of 2. She argued that she was entitled to an enhanced lodestar, pursuant to the decisions in *Ketchum v. Moses* (2001) 24 Cal.4th 1122 [104 Cal.Rptr.2d 377, 17 P.3d 735] (*Ketchum*) and *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553 [21 Cal.Rptr.3d 331, 101 P.3d 140], because counsel had worked on "a pure contingent basis" for two years, and also "because of the risk associated with the case (including the risk created by the County's aggressive defense and [the] generous funding of MBA's planners and attorneys)." Bernardi further argued that a multiplier of 2 was warranted due to the difficult and protracted nature of the litigation.

Bernardi's request for attorney fees was supported by the declarations of Bernardi, Attorney Stamp, and land use planner/certified law student Molly Erickson, as well as declarations of attorney experts Jane Haines and Neil Shapiro, and the declaration of Gillian Taylor, a CEQA activist. In his 34-page declaration, Stamp detailed each step of the lengthy CPRA litigation, while Erickson stated in her declaration that her hours were reasonable and "[t]his case was particularly challenging due to the magnitude of the September Ranch project files and the strong and uncompromising opposition of the County and MBA." Attorney Haines stated in her declaration that she was an experienced land use lawyer; that she was familiar with the case, which was unusually difficult "due to the complexity of the legal issues and the long time period over which the case was litigated"; that an hourly rate of $375 was appropriate for Stamp due to his outstanding knowledge of the CPRA; and a lodestar enhancement multiplier of 2 was justified.

---

[5] Section 6259, subdivision (d) provides, "The court shall award court costs and reasonable attorney fees to the plaintiff should the plaintiff prevail in litigation filed pursuant to this section. The costs and fees shall be paid by the public agency of which the public official is a member or employee and shall not become a personal liability of the public official. If the court finds that the plaintiff's case is clearly frivolous, it shall award court costs and reasonable attorney fees to the public agency."

In his declaration, Attorney Neil Shapiro stated that he had previously qualified as an expert on the reasonable value of attorney services in CPRA cases. He had reviewed the pleadings and motion papers in this case, the briefing provided to the special master, the trial court's orders, correspondence between counsel of record, and the moving papers for the attorney fees motion (including the declarations of Stamp and Erickson). Shapiro concluded that the work performed by Bernardi's counsel was reasonably necessary to the result achieved (the production of approximately 3,000 pages of documents that the County had initially declined to produce); the quality of counsel's work was consistently excellent; the hourly rates for the attorneys were consistent with the prevailing rates in Monterey; and the reasonable value of the attorneys' work was no less than $194,810. Shapiro declined to give an opinion regarding the use of a multiplier because he believed that was a matter of judicial discretion.

Additionally, Bernardi requested an award of attorney fees on the attorney fees motion in the amount of $19,055, as stated in Attorney Stamp's supplemental declaration filed on January 26, 2007. Stamp claimed 29 attorney hours for himself, 24 hours for law student Erickson, and 10 hours at $350 per hour for Attorney Joel Franklin, as the basis for the additional attorney fees of $19,055.

Bernardi also requested costs in the amount of $14,985, which included her share of the special master's fee ($8,400); filing fees ($442); deposition costs ($1,642); and "other client costs" ($4,501). She did not request costs associated with the attorney fees motion.

### 2. *County's Opposition to the Attorney Fees Motion*

The County argued that Bernardi's attorney fees motion should be denied because Bernardi did not prevail in the CPRA litigation within the meaning of section 6259, subdivision (d), which provides in part that "[t]he court shall award court costs and reasonable attorney fees to the plaintiff should the plaintiff prevail in litigation filed pursuant to this section." According to the County, Bernardi did not prevail because the special master sustained "the vast majority of County's exemptions," and also rejected Bernardi's demands for MBA's private EIR consultant records, as well as her claim that the law firm of Downey Brand, the County's outside counsel for the September Ranch project, was not acting as a legal advisor.

The County also argued, relying on the decision in *Los Angeles Times v. Alameda Corridor Transportation Authority* (2001) 88 Cal.App.4th 1381 [107 Cal.Rptr.2d 29], that the MBA records that were disclosed pursuant to the trial court's order were of minimal significance and therefore the disclosure

of those records did not justify a finding that Bernardi had prevailed. The County additionally maintained that because the CPRA litigation did not motivate the County's voluntary release of public records, Bernardi was not the prevailing party.

Alternatively, the County urged that, even assuming Bernardi was partially successful in her CPRA litigation, the award of attorney fees and costs should be reduced to account for her "pursuit of unsuccessful demands." The County insisted that Bernardi had been successful in only one of her three demands (for public MBA records) and that the two unsuccessful demands (for private MBA records and privileged Downey Brand records) were frivolous. The County also asserted that the hourly rates claimed by Bernardi's counsel were inflated and should be reduced.

According to the County, if Bernardi's attorney fees claim was properly reduced by two-thirds to reflect her lack of success, and the hourly rates were appropriately reduced, the lodestar amount for attorney fees would not exceed $60,500. The County insisted that no multiplier for the lodestar amount was justified because the County's defense of the CPRA litigation was meritorious and there was no authority supporting the application of a multiplier to attorney fees awarded under the CPRA.

The County also objected to Bernardi's costs on the ground that the trial court had previously ordered each party to pay one-half of the special master's fees and costs. Finally, the County argued that Bernardi's request for an award of attorney fees on the attorney fees motion should be denied.

The County's opposition was supported by the declaration of Wendy Strimling, deputy county counsel, who provided a detailed account from the County's perspective of Bernardi's requests for September Ranch project records, the County's responses, and the CPRA litigation. Strimling also stated in her declaration that the attorney who represented MBA in the CPRA litigation charged $325 per hour and the associate attorney who assisted had an hourly rate of $205, which were less than the hourly rates charged by Bernardi's counsel for similar work.

### 3. *The Trial Court's Order*

On February 21, 2007, the County filed a motion asking that the special master be appointed to hear Bernardi's attorney fees motion. Bernardi opposed the motion. At the hearing held on February 23, 2007, the trial court took the motion requesting the appointment of the special master under submission after hearing argument on the attorney fees motion. No separate order issued on the motion requesting the appointment of the special master.

However, the trial court did not refer the matter to the special master and issued its order after submission awarding attorney fees and costs on March 29, 2007.

In its attorney fees order, the trial court made the following rulings: (1) Bernardi was the prevailing party; (2) the number of hours claimed was reasonable; (3) the hourly rate for Attorney Stamp was reduced to $365; (4) the hourly rate for law student Erickson was reduced to $185; (5) the hourly rates claimed for the associate attorney and the paralegals were approved; and (6) based on these rulings, the lodestar amount was $188,630.

The trial court also determined that the lodestar amount should be enhanced by applying a multiplier of 1.25, in recognition of Bernardi's contingency fee arrangement with her counsel and the extended delay before counsel could receive compensation. The court also reasoned that "although there were some unique aspects to this action, the primary feature was the amount of time and effort required to conclude the matter. The hourly compensation award largely addresses those factors. After considering all relevant circumstances, the Court finds that [Bernardi is] entitled to an enhancement of 1.25."

Additionally, the trial court awarded attorney fees on the attorney fees motion in the amount of $8,500 plus costs as requested in the amount of $14,985. The total amount of attorney fees awarded was $244,287.50.

## III. DISCUSSION

On appeal, the County argues that the trial court erred in awarding an unreasonable amount of attorney fees, and therefore the award of attorney fees and costs must be vacated. Our analysis of the County's arguments on appeal is guided by the attorney fees provision of the CPRA and the standard of review applicable to an award of attorney fees.

### A. *The California Public Records Act Attorney Fees Provision*

"The CPRA . . . was enacted for the purpose of increasing freedom of information by giving members of the public access to information in the possession of public agencies. [Citation.] The Legislature has declared that such 'access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state.' ([§] 6250.)" (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 425–426 [121 Cal.Rptr.2d 844, 49 P.3d 194] (*Filarsky*).) Thus, " '[t]he CPRA embodies a strong policy in favor of disclosure of public records . . . .' [Citation.]" (*San Lorenzo Valley*

*Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1408 [44 Cal.Rptr.3d 128].)

■ A judicial determination of a public agency's obligation to disclose records to the public may be obtained under the specific procedures set forth in the CPRA. (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist., supra,* 139 Cal.App.4th at p. 1408.) The CPRA also "includes protections and incentives for members of the public to seek judicial enforcement of their right to inspect public records subject to disclosure. 'The court shall award court costs and reasonable attorney fees to the plaintiff should the plaintiff prevail in litigation filed pursuant to this section. The costs and fees shall be paid by the public agency of which the public official is a member or employee and shall not become a personal liability of the public official. If the court finds that the plaintiff's case is clearly frivolous, it shall award court costs and reasonable attorney fees to the public agency.' (§ 6259, subd. (d) . . . .) An award of costs and attorney fees pursuant to this provision is mandatory . . . ." (*Filarsky, supra,* 28 Cal.4th at p. 427, italics omitted.)

Thus, the threshold issue with respect to a plaintiff's entitlement to an award of attorney fees in CPRA litigation, pursuant to section 6259, subdivision (d), is whether the plaintiff prevailed in the litigation. (*Filarsky, supra,* 28 Cal.4th at pp. 427–428; *Motorola Communication & Electronics, Inc. v. Department of General Services* (1997) 55 Cal.App.4th 1340, 1345–1346 [64 Cal.Rptr.2d 477].) "A plaintiff is considered the prevailing party if his [or her] lawsuit motivated defendants to provide the primary relief sought or activated them to modify their behavior [citation], or if the litigation substantially contributed to or was demonstrably influential in setting in motion the process which eventually achieved the desired result . . . ." (*Belth v. Garamendi* (1991) 232 Cal.App.3d 896, 901–902 [283 Cal.Rptr. 829]; see *Los Angeles Times v. Alameda Corridor Transportation Authority, supra,* 88 Cal.App.4th at p. 1391.) In the present case, the County does not argue on appeal that Bernardi was not the prevailing party in the underlying CPRA litigation.

## B. *The Standard of Review*

■ In determining the amount of reasonable attorney fees to be awarded under a statutory attorney fees provision, the trial court begins by calculating the "lodestar" amount. (*Ketchum, supra,* 24 Cal.4th at p. 1131; *Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 448–449 [78 Cal.Rptr.2d 913] (*Meister*).) The "lodestar" is "the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group,*

*Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [95 Cal.Rptr.2d 198, 997 P.2d 511].) To determine the reasonable hourly rate, the court looks to the "hourly rate . . . prevailing in the community for similar work." (*Ibid.*) Using the lodestar as the basis for the attorney fees award "anchors the trial court's analysis to an objective determination of the value of an attorney's services, ensuring that the amount awarded is not arbitrary. [Citation.]" (*Ibid.*)

The California Supreme Court has further instructed that attorney fees awards "should be fully compensatory." (*Ketchum, supra,* 24 Cal.4th at p. 1133.) Thus, in the absence of "circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent,* including those relating solely to the fee. [Citation.]" (*Ibid.*) However, "[a] fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 635 [186 Cal.Rptr. 754, 652 P.2d 985].)

As this court has previously observed, "California courts have long held that trial courts have broad discretion in determining the amount of a reasonable attorney's fee award. This determination is necessarily ad hoc and must be resolved on the particular circumstances of each case." (*Meister, supra,* 67 Cal.App.4th at p. 452.) In exercising its discretion, the trial court may accordingly "consider all of the facts and the entire procedural history of the case in setting the amount of a reasonable attorney's fee award." (*Ibid.*) An attorney fees award " 'will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence. [Citations.]' [Citation.]" (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894 [76 Cal.Rptr.3d 325].)

In reviewing the trial court's exercise of its discretion, we also recognize that "[t]he 'experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' " (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49 [141 Cal.Rptr. 315, 569 P.2d 1303].)

### C. *Analysis*

On appeal, the County contends that the attorney fees award of $244,287.50 is unreasonable for several reasons, including Bernardi's "relatively minimal success," her "legally unsupported" demand for the private records of MBA, her "frivolous demand" for the records of the County's privileged communications with its outside counsel, Downey Brand, the

"insignificant" court-ordered disclosure of 2,000 pages, and the lack of justification for a lodestar enhancement in light of Bernardi's limited success and the burden on the taxpayers.[6]

The County also contends that attorney fees should not be awarded for the time spent pursuing approximately 1,000 pages of public records that the County "voluntarily disclosed in the few months after the lawsuit was filed." Additionally, the County asserts that Bernardi's attorney fees motion was not adequately documented with billing records detailing the hours spent and the services provided.[7]

We find that the County's multiple arguments regarding the unreasonableness of the attorney fees award may be condensed to two major arguments. First, while the County does not challenge the hourly rates that the trial court found were reasonable, the County contends that the lodestar amount should be reduced by two-thirds (to $62,870) to reflect Bernardi's partial success, which the County describes as a "lack of success on two of [her] three central demands." Second, the County claims that Bernardi is not entitled to a lodestar enhancement in light of her partial success. We will consider each argument in turn.

### 1. *The Lodestar Amount*

In response to the County's contentions regarding the lodestar amount, Bernardi argues the trial court acted well within its discretion in finding that the number of hours claimed by Bernardi's counsel for work performed in the CPRA litigation was reasonable, and that substantial evidence supports the court's finding. We agree.

 It is well established that " '[t]he value of legal services performed in a case is a matter in which the trial court has its own expertise. . . . The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.' [Citation.]" (*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at p. 1096.) Here, the trial court determined that "the primary feature" of the CPRA litigation was "the amount of time and effort required to conclude the matter." The court therefore found that the amount of hours claimed by Bernardi's counsel was reasonable in light of the length and difficulty of the CPRA litigation.

---

[6] The County also states in its opening brief that the amount of attorney fees awarded on the attorney fees motion should be limited to the trial court's award of $8,500. We do not understand this statement to constitute an appellate challenge to the award of attorney fees on the attorney fees motion.

[7] We note that the County does not challenge the amount of the costs award.

The evidence supporting the trial court's finding of reasonableness included the declaration of Attorney Michael Stamp, who detailed the lengthy CPRA litigation and the hours spent by Bernardi's counsel. The evidence also included the declaration of Attorney Neil Shapiro, as an expert on attorney fees in CPRA litigation, who concluded that the work performed by Bernardi's counsel was reasonably necessary to the results achieved in the underlying litigation. This evidence alone was sufficient to support the trial court's finding that the number of hours claimed by Bernardi's counsel was reasonable.

Moreover, we note that the County does not argue that the number of hours that the trial court found reasonable in determining the lodestar amount was inflated or excessive in proportion to the legal services provided by Bernardi's counsel. Instead, the County contends that the number of hours awarded in an attorney fees request under the CPRA must be commensurate with the degree of success achieved in the litigation. On that basis, the County contends that the trial court erred in failing to find that only one-third of the hours claimed by Bernardi were reasonable, since she only succeeded in obtaining disclosure of one-third of the disputed public record requests. To support this proposition, the County relies on the decisions in *Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328 [42 Cal.Rptr.3d 607] (*Mann*), *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140 [50 Cal.Rptr.3d 273] (*Graciano*), and *Meister, supra*, 67 Cal.App.4th 437.

We find the County's reliance on the decisions in *Mann*, *Graciano*, and *Meister* to be misplaced. In *Graciano*, an automobile purchaser sued a dealership under the Automobile Sales Finance Act (Civ. Code, § 2981 et seq.) and the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.). Among other things, the appellate court determined that "[i]n calculating the lodestar amount in this case, the court should have considered whether it could segregate the work [the plaintiff's] counsel performed on causes of action for which she was entitled to fees from those for which she was not." (*Graciano, supra*, 144 Cal.App.4th at p. 157.)

In *Mann*, the plaintiffs' motion to strike under California's anti-SLAPP (strategic lawsuit against public participation) statute (Code Civ. Proc., § 425.16) was unsuccessful as to three of four causes of action. (*Mann, supra*, 139 Cal.App.4th at pp. 333–334.) In reviewing the trial court's award of attorney fees to the plaintiffs as the prevailing parties, the *Mann* court ruled that "[t]he fees awarded to a defendant who was only partially successful on an anti-SLAPP motion should be commensurate with the extent to which the motion changed the nature and character of the lawsuit in a practical way." (*Id.* at p. 345.) Thus, "the court should have considered the significance of the overall relief obtained by defendants in relation to the hours reasonably expended on the litigation and whether the expenditure of counsel's time was

reasonable in relation to the success achieved." (*Ibid.*) An attorney fees award that was proportionate to the success achieved in the anti-SLAPP motion would, the *Mann* court determined, advance "the objectives of the anti-SLAPP statute and minimize[] abuses." (*Id.* at p. 347.)

In *Meister*, which involved an action for violation of the Information Practices Act of 1977 (Civ. Code, § 1798 et seq.), this court observed that "[t]he 'degree of success' is one of the factors that a trial court should consider in setting the amount of a reasonable attorney's fee award. [Citation.]" (*Meister, supra,* 67 Cal.App.4th at p. 454.) We determined that substantial evidence supported the trial court's finding that the plaintiff's lawsuit did not result in any change, and therefore we upheld the trial court's reduction of the plaintiff's attorney fees request. (*Id.* at p. 455.)

■ The decisions in *Mann*, *Graciano*, and *Meister* are distinguishable because each decision construed an attorney fees statute other than the CPRA attorney fees statute (§ 6259, subd. (d).) The California Supreme Court has stated that "every fee-shifting statute must be construed on its own merits . . . ." (*Ketchum v. Moses, supra,* 24 Cal.4th at p. 1136.) We also find that the decisions do not stand for the general proposition that an award of attorney fees under a fee statute must always be commensurate with or in proportion to the degree of success obtained in the litigation. As we stated in *Meister*, the general rule is that the prevailing party's degree of success is only one of the factors the trial court may consider in determining the amount of reasonable attorney fees. (*Meister, supra,* 67 Cal.App.4th at p. 455; *PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at p. 1096 [success or failure is one of the factors in valuing legal services].)

Moreover, the County has not cited any authority for the proposition that an attorney fees award in a CPRA action must always be proportionate to the prevailing party's degree of success in obtaining the disclosure of public records. To the contrary, it has been held that "[n]othing in any case decided under the [CPRA] supports the contention that a plaintiff who obtains only one of two documents sought has not prevailed within the meaning of the [CPRA]. Other cases . . . have awarded fees where disclosure is ordered for fewer than all of the documents sought." (*Los Angeles Times v. Alameda Corridor Transportation Authority, supra,* 88 Cal.App.4th at p. 1391.) The rationale is that denying attorney fees where the plaintiff erred with respect to the public agency's obligation to disclose some of the documents sought "would chill efforts to enforce the public right to information." (*Id.* at p. 1392.) A rule requiring an award of attorney fees to be commensurate with the degree of success in CPRA litigation could have a similar chilling effect, if, as the County proposes, the trial court was required to reduce the lodestar amount in strict proportion to the ratio of successful to unsuccessful public record requests.

■ Thus, while the degree of the plaintiff's success in obtaining the objectives of the litigation is a factor that the trial court may consider in determining an award of reasonable attorney fees under a fee statute (*Meister, supra*, 67 Cal.App.4th at p. 455; *PLCM Group, Inc. v. Drexler, supra*, 22 Cal.4th at p. 1096), including the CPRA fee statute (§ 6259, subd. (d)), we determine that there is no requirement that the trial court make an award of attorney fees in an amount that is commensurate with or in proportion to the degree of success in the CPRA litigation. In the present case, we therefore find that the trial court was not required to calculate the lodestar amount by reducing the hours claimed by Bernardi's counsel in proportion to the County's perception of Bernardi's degree of success in the underlying CPRA litigation. Moreover, as we have discussed, substantial evidence supports the trial court's determination that the hours claimed by Bernardi's counsel in her attorney fees request were reasonable. For these reasons, we find no merit in the County's argument that the lodestar amount must be reduced by two-thirds to $62,870.

■ We also find no merit in the argument that Bernardi's attorney fees motion was not adequately documented with billing records detailing the hours spent and the services provided. As stated in *Weber v. Langholz* (1995) 39 Cal.App.4th 1578, 1587 [46 Cal.Rptr.2d 677], "The trial court could make its own evaluation of the reasonable worth of the work done in light of the nature of the case, and of the credibility of counsel's declaration unsubstantiated by time records and billing statements. Although a fee request ordinarily should be documented in great detail, it cannot be said in this particular case that the absence of time records and billing statements deprived the trial court of substantial evidence to support an award; we do not reweigh the evidence." (See also *Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 624–625 [134 Cal.Rptr. 602] [evidence of actual work performed, including pleadings and depositions, was sufficient].)

### 2. The Lodestar Enhancement

The County also contends that Bernardi's partial success in obtaining public records in the underlying CPRA litigation requires denial of her claim for a lodestar enhancement, and therefore the trial court erred in applying a multiplier of 1.25 to the lodestar amount. According to the County, "It stands the incentive structure on its head for [Bernardi] to receive enhanced fees because the County vigorously and successfully defended against [her] unfounded demands." The County further contends that a lodestar enhancement should be denied in the public interest, where, as here, the burden on the taxpayers exceeds the minimal public benefit obtained in the CPRA litigation.

Bernardi argues to the contrary that the trial court properly applied a 1.25 multiplier to enhance the lodestar amount of attorney fees in recognition of counsel's contingency fee risk and the significant delay in obtaining payment of attorney fees, as well as the unique issues presented.

■ Our review is guided by well-established principles. The California Supreme Court has instructed that, while the lodestar amount "is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including . . . (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award. [Citation.]" (*Ketchum, supra*, 24 Cal.4th at p. 1132.)

An enhancement of the lodestar amount to reflect the contingency risk is "[o]ne of the most common fee enhancers . . . ." (*Graham v. DaimlerChrysler Corp., supra*, 34 Cal.4th at p. 579.) "The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." (*Ketchum, supra*, 24 Cal.4th at p. 1132.) Thus, as explained in *Ketchum*, the lodestar enhancement "is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees." (*Id.* at p. 1138.) The trial court's decision to apply a multiplier to enhance an award of attorney fees "is a discretionary one." (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1241 [66 Cal.Rptr.3d 680].)

Here, the trial court applied a modest multiplier of 1.25 in recognition of Bernardi's contingency fee arrangement with her counsel, the extended delay before counsel could receive compensation, and the presence of unique issues. The multiplier of 1.25 was much lower than the 2 multiplier requested by Bernardi, and reflects the trial court's careful consideration of the factors that properly justify a lodestar enhancement. We therefore conclude that the court acted entirely within its discretion in adjusting the attorney fees award in this case by applying a multiplier of 1.25 to the lodestar amount.

Finally, we decline Bernardi's suggestion that this court make an award of attorney fees on appeal. As this court has previously stated, "Although we have the power to appraise and fix attorney fees on appeal, we deem it the better practice to remand the cause to the trial court to determine the appropriate amount of such fees. [Citation.]" (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1610 [71 Cal.Rptr.3d 361].)

## IV. DISPOSITION

The order awarding attorney fees under Government Code section 6259, subdivision (d) is affirmed. Costs on appeal are awarded to respondents. The matter is remanded to the trial court for a determination of the appropriate amount of attorney fees on appeal to be awarded to respondents.

Rushing, P. J., and Premo, J., concurred.