Filed 4/30/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AUGUSTINE CALDERA, | |
| Plaintiff and Appellant, | G057343, G057478 |
| v. | |
| | (Super. Ct. No. CIVDS1000177) |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of San Bernardino County, Bryan F. Foster, Judge.  The order is reversed. The case is remanded with directions.

Scolinos, Sheldon & Nevell and Todd F. Nevell for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Chris A. Knudsen, Assistant Attorney General, Elisabeth Frater and Mark Schreiber, Deputy Attorneys General for Defendants and Respondents.

\*          \*          \*

This is an appeal from a trial court's order of attorney fees under the Fair Employment and Housing Act (FEHA). Augustine Caldera is a prison correctional officer who sometimes stutters when he speaks. In 2010, Caldera filed a lawsuit against the California Department of Corrections and Rehabilitation (CDCR) and his supervisor alleging disability discrimination. The trial court granted defendants' motion for summary judgment. We reversed; we held that a stutter constitutes a disability under the FEHA. (*Caldera v.* [CDCR] *et al.* (Feb. 25, 2014) [nonpub. opn.] (*Caldera I*).)

A jury found in Caldera's favor and awarded $500,000. The court granted a motion for new trial because it found the damage award excessive. We reversed on procedural grounds. (*Caldera v.* [CDCR] (2018) 25 Cal.App.5th 31, 34 (*Caldera II*).)

After nearly a decade of litigation, Caldera sought about $2.4 million in statutory attorney fees (a $1.2 million "lodestar" and a 2.0 "multiplier"). The court awarded a little over $800,000. Caldera appeals.

An attorney fee award under the FEHA is designed to incentify and reward a plaintiff's attorney in a civil rights case. Trial courts first determine a lodestar amount: the hours spent times a reasonable hourly rate. Courts may then increase the amount, usually by applying a multiplier to the lodestar. The multiplier is to compensate for extrinsic factors such as the risk of nonpayment (the contingency factor), the public interest advanced by the case, the difficulty of the issues involved, and the skill of the attorneys. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135 (*Ketchum*).)

Here, Caldera could not find a local attorney to take his discrimination lawsuit, so he hired an out-of-town firm. But when calculating attorney fees, the court set the attorneys' hourly rate based on a lower local rate, rather than a higher out-of-town rate. The court then applied the extrinsic *Ketchum* factors to the hourly rate, rather than applying a multiplier to the lodestar. In sum, Caldera's attorneys were not adequately compensated consistent with the purposes of the FEHA.

Thus, we reverse the trial court's order for attorney fees.

# I

## FACTS AND PROCEDURAL BACKGROUND

In 2008, Caldera worked at the California State Institute for Men in San Bernardino County. Caldera's supervisor, Sergeant James Grove, and other prison employees mocked and mimicked Caldera's stutter. (*Caldera II*, *supra*, 25 Cal.App.5th at pp. 34-35.) A witness later "agreed that 'there was 'a culture of joking' at the prison about Caldera's stutter." (*Id*. at p. 35.)

Caldera filed a formal grievance with the CDCR. Caldera "complained of harassment and discrimination on the basis of my stuttering disability and asked that Sergeant James Grove's discriminatory actions be investigated." Caldera later "received a letter from the [CDCR's] Office of Civil Rights informing me that my complaint had been rejected because my stuttering disability was 'not recognized as a disability under EEO law, although it is recognized by ADA as a disability.'"

Caldera then "contacted numerous local lawyers" in the Inland Empire "all of whom turned me down. I then expanded my search for a lawyer to Los Angeles County. I spoke to lawyers at [a law firm] in Los Angeles and was told that my potential case would be reviewed, but I never heard back. Ultimately, in April 2009 I was referred to Attorney Todd Nevell of Scolinos, Sheldon & Nevell in Pasadena, who met with me and agreed to represent me on a contingency basis."

*Court Proceedings*

In 2010, Caldera sued the CDCR and Grove for various causes of action related to his stuttering. The trial court granted the defendants' motion for summary judgment. This court reversed: "We conclude that having a stutter constitutes a disability under the [FEHA]. We further conclude the moving papers contain sufficient evidence for a trier of fact to reasonably find Caldera was discriminated against because he stutters." (*Caldera I*, *supra*, G048943 [nonpub. opn.].)

3

In 2015, there was a 13-day jury trial. Caldera was represented by Nevell, and his partner Daniel Sheldon. The defendants were represented by the Attorney General. The jury returned verdicts in Caldera's favor and awarded him $500,000 in noneconomic damages. The court granted defendants' new trial motion "'limited to damages.'" (*Caldera II*, *supra*, 25 Cal.App.5th at p. 47.) This court affirmed in part and reversed in part. We affirmed the jury's verdicts, holding that "the harassing conduct was both severe and persuasive." (*Id*. at p. 43.) We reversed the trial court's granting of defendants' motion for new trial on procedural grounds. (*Id*. at pp. 47-48.)

In 2018, after jurisdiction of the case returned to the trial court, Caldera filed a motion for attorney fees under the FEHA. (Gov. Code, § 12965, subd. (b).)[1] Caldera's request covered nearly a decade of litigation to include the jury trial and the two appeals. Caldera requested a lodestar amount of $1,234,182.50 and a 2.0 multiplier, for a total of $2,468,365.00. After conducting hearings and making various adjustments, the court awarded $810,067.50 in statutory attorney fees.

II

DISCUSSION

Caldera appeals from the trial court's attorney fee award order. We review a court's attorney fee award for an abuse of discretion. (*Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 378.)

We will first look at the general legal principles concerning attorney fee awards under the FEHA, then we will review the underlying relevant proceedings that occurred in this case, and then we will apply the law to the relevant facts.

---

[1] Further undesignated statutory references are to the Government Code.

*A. Legal Principles Concerning FEHA Statutory Attorney Fee Awards*

Generally, "each party to a lawsuit ordinarily pays its own attorney fees." (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.) However, a prevailing plaintiff in a workplace discrimination lawsuit is usually entitled by statute to an award of attorney fees. (§ 12965, subd. (b); *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 115 [in a FEHA action "a prevailing *plaintiff* should ordinarily receive his or her costs and attorney fees unless special circumstances would render such an award unjust"].)

"In enacting the FEHA, the Legislature sought to safeguard the rights of all persons to seek, obtain, and hold employment without discrimination on account of various characteristics, which now include race, religion, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, and sexual orientation." (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 984.)

Through an attorney fee award, the FEHA encourages private counsel to vindicate the right of an employee to work in an environment free from unlawful discrimination. (See *Flannery v. Prentice* (2001) 26 Cal.4th 572, 583 ["""Without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible"""]; *Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1387 ["the purpose behind the [attorney] fee provision was to make it easier for a plaintiff of limited means to bring a meritorious suit"].)

In order to calculate an attorney fee award under the FEHA, courts generally use the well-established lodestar method. The lodestar amount is simply the product of the number of hours spent on the case, times an applicable hourly rate. (*Ketchum*, *supra*, 24 Cal.4th at p. 1133 [the "lodestar figure [is] based on the reasonable hours spent, multiplied by the hourly prevailing rate for private attorneys in the community conducting *noncontingent* litigation of the same type"].)

5

In most contingency cases, courts may then increase the lodestar amount by applying a multiplier. (*Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1399 [it is not unusual for counsel to ask for a multiplier in contingent fee cases].) The purpose of the multiplier is to reward the prevailing attorney with an increased fee in light of the extrinsic *Ketchum* factors: the importance and difficulty of the litigation; the novelty of the issues involved; the risk of nonpayment for the attorney's services (the contingency factor); the skill of the attorney in presenting the case; and the magnitude of the results obtained. (*Ketchum*, *supra*, 24 Cal.4th at pp. 1132-1134.)

*B.  Relevant Proceedings*

After prevailing at the jury trial and a second successful appeal, Caldera filed a motion for $2,468,365.00 in statutory attorney fees under the FEHA, which represented a lodestar amount of $1,234,182.50, and a 2.0 multiplier.

In support of the lodestar, Caldera attached exhibits including time sheets for Nevell (1,324.80 hours at $750 per hour) and Sheldon (285.85 hours at $750 per hour), and billing records for appellate attorney Norm Pine (40.30 hours at $650 per hour). Caldera also attached a declaration by James Desimone, a Los Angeles-based employment attorney. Desimone averred under penalty of perjury: "I am familiar with the rates charged by plaintiff-side employment attorneys throughout Southern California." Desimone opined: "I find Mr. Nevell and Mr. Sheldon's hourly rates reasonable in part because I am a thirty-three year lawyer with similar honors and accolades and currently charge $875.00 an hour for my services."

In support of the 2.0 multiplier, Caldera attached numerous exhibits to the motion, including articles from several publications, including: The National Law Review Employment Law Notes ("Court Affirms $500,000 Jury Award to Employee Who Stutters"); California Civil Practice Employment Litigation ("evidence was sufficient to support a verdict that the harassment of a correctional officer employee, who

6

spoke with a stutter, was severe or pervasive"); Johnston Mediation Recent Employment Decisions ("substantial evidence supported the jury's factual finding of disability harassment"); Tyson & Mendes ("Disability Harassment in the Workplace Lands $500k Jury Verdict for Mimicking and Mocking an Employee's Stutter"); Liberty Cassidy Whitmore ("Supervisor Who Mocked Employee's Stutter Violated FEHA's Prohibition on Disability Harassment"); and Business Insurance ("Court reinstates $500,000 disability award to prison guard").

Nevell also filed his own declaration in support of the 2.0 multiplier. Nevell averred: "My firm took an enormous risk in initially agreeing to take this case and then again when we agreed to handle the appeal of the dismissal of the case on summary judgment – all on a contingency. . . . Most lawyers would have cut their [losses] after the case was dismissed on summary judgment. We did not. We believed that Caldera and others who are similarly disabled had a protected disability. We believed that Caldera had been subjected to unlawful harassment and discrimination based on that disability and that important workplace rights were at stake. Thereafter, . . . against great odds we successfully reversed summary judgment . . . , prevailed at trial . . . and prevailed on the second appeal. . . . All of this was at great financial risk to us. We are a small firm. We devoted more than an entire year's worth of my salary to prosecuting the case. We advanced more than $90,000 in costs alone. We have received nothing in return. Had we lost, it would have resulted in a significant economic burden on our firm. The delay in receiving any compensation has been extraordinary. This case has been pending more than 4 times longer than my typical employment case. If any case ever justified a 2.0 multiplier, this one does."

In further support of the 2.0 multiplier, attorney Desimone averred: "Given the challenges faced on this case, few attorneys would have risked advancing litigation, expert, and trial costs, to say nothing of 'loaning' the plaintiff thousands of attorney hours. It is my understanding that the CDCR's highest pre-trial offer was $70,000 . . . .

7

When contrasted with the CDCR's settlement offer, the results Mr. Nevell and Mr. Sheldon obtained in this case were outstanding." Desimone went on to opine that the "published opinion . . . will benefit thousands of victims of employment discrimination. Again, the verdict obtained by Mr. Nevell and Mr. Sheldon not only helps the plaintiff in this case, it will also serve to protect thousands of State employees of the CDCR who have been, or may be in the future, discriminated against and harassed based on a disability or other protected right."

The defendants filed a response to the motion for attorney fees, urging the court to reduce the number of attorney hours, but they did "concede a lodestar hourly attorney fee of $576.23 per hour." The defendants proposed $551,237.88 as the lodestar amount, and opposed any multiplier. As far as the extrinsic factors, the defendants argued the contingent risk was small, Caldera's attorneys were not precluded from other work, and the "multiplier is not appropriate because only a private financial interest was advanced by the matter." (Boldfacing omitted.)

The trial court ruled: "The hourly rate requested by the Plaintiff is too high for this locale. A reasonable rate is between $450 and $550, before application of any multiplier. Considering the length of this case and the hurdles Plaintiff had to overcome to get to this point, the higher rate of $550 per hour is reasonable." The court adjusted downward the number of attorney hours, and ultimately calculated $810,067.50 as the lodestar amount.

The court noted Caldera "seeks a multiplier of 2.0 based on the following factors: (1) contingent risk; (2) preclusion of acceptance of other work; (3) exceptional results obtained; (4) public interest advanced by the case; and (5) difficulty of issues involved." The court recognized that "taking the case precluded other employment by counsel, the quality of the representation and results obtained, and the undesirability of the case, factors approved in *Ketchum*, *supra*, [24 Cal.4th at p.] 1132." However, the

8

court stated:  "Each of these factors is already considered when setting the lodestar rate of $550, which is at the high end of attorney's fees awards in San Bernardino County.  [¶] . . . Plaintiff claims [this case] is the first case to find a discrimination claim can be based on a stuttering disability . . . .  Although the appeal was published and discussed in several publications, it is not found to be stunningly unique on review."

*C.  Legal Analysis*

When a plaintiff needs to hire out-of-town counsel, a trial court must consider *counsel's* "home market rate" when setting the hourly rate, rather than the local market rate.  (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 619.)  In *Center for Biological Diversity*, environmental groups (the plaintiffs) filed a writ of mandate and successfully stopped a housing development, which had been approved by the County of San Bernardino.  (*Id*. at p. 609.)  When ruling on the plaintiffs' request for attorney fees, the trial "court disallowed hourly rates of out-of-town counsel that exceeded local Inland Empire rates of $370 . . . ."  (*Id*. at p. 611.)  The Court of Appeal reversed because the plaintiffs "presented undisputed evidence that qualified local representation that would accept reduced rates or a contingency arrangement was unavailable."  (*Id*. at p. 615.)  Relying on several published opinions, the court held that the trial "court abused its discretion by applying local market rates rather than counsel's home market rates."  (*Id*. at p. 619.)

In FEHA cases, it is particularly important for trial courts to apply an out-of-town rate when a plaintiff cannot secure a local attorney.  (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 397-400 (*Horsford*).)  In *Horsford*, a group of campus police officers prevailed in a FEHA racial discrimination lawsuit against California State University at Fresno.  (*Id*. at pp. 371-372.)  The plaintiffs could not find a Fresno attorney to take the case on a contingency, so they hired an attorney from the San Francisco area.  (*Id*. at p. 398.)  The plaintiffs later sought

9

$3.1 million in attorney fees; the trial court awarded $1.2 million. (*Id*. at p. 372.) The Court of Appeal reversed, in part, because the trial "court erred in failing adequately to consider the propriety of a higher hourly rate for . . . a San Francisco attorney, in order to accomplish the purposes of FEHA." (*Id*. at p. 397.)

In *Horsford*, the Court of Appeal explained the rationale for its holding: "the Supreme Court has used the formulation 'basic fee for comparable services in the community.' However, it has never hinted that, in the unusual circumstance that local counsel is unavailable, the trial court is limited to the use of local hourly rates. The purpose of statutory attorney fee provisions is to provide financial incentives necessary for the private enforcement of important civil rights. [Citation.] If . . . the local bar has not the resources to engage in complex litigation on a contingency-fee basis, the public interest in the prosecution of meritorious civil rights cases requires that the financial incentives be adjusted to attract attorneys who are sufficient to the cause. In the absence of any realistic indication plaintiffs could have found local counsel, it was an abuse of discretion to fail even to consider an hourly rate based on counsel's 'home' market rate." (*Horsford*, *supra*, 132 Cal.App.4th at p. 399.)

Here, the trial court rejected Caldera's request of $750 per hour because it was "too high for this locale." Instead, the court lowered the hourly rate to $550 per hour, which the court stated was at the top of the local rate for counsel in San Bernardino County ($450 to $550 per hour). But there was unrefuted evidence that Caldera was unable to find an attorney that would take his case in the Inland Empire (the greater San

10

Bernardino and Riverside areas).  This was an abuse of discretion because the court failed to consider the out-of-town market rates of the attorneys involved in this case. [2]

Based on the undisputed record, the trial court's award of $550 per hour was lower than the comparable rate for similarly experienced attorneys in the Los Angeles County area (even the Attorney General conceded that a reasonable rate should exceed $550 per hour).  Thus, we reverse the trial court's order.  On remand, we direct the court to recalculate the loadstar amount based on the *attorneys'* local market rate (Los Angeles County rather than San Bernardino County).

As far the trial court's rejection of Caldera's requested 2.0 multiplier, what complicates our review is that the court properly acknowledged that many—if not all—of the extrinsic *Ketchum* factors applied in this case.  We wholeheartedly agree.  The trial court apparently recognized that suing a state agency for discrimination based on a stuttering disability was a novel lawsuit of statewide importance, although the court found it not to be "stunningly unique."  The court also appropriately recognized "taking the case precluded other employment by counsel, the quality of the representation and results obtained, and the undesirability of the case."

However, rather than applying a multiplier to the lodestar amount based on the *Ketchum* factors, the trial court stated:  "Each of these factors is already considered when setting the lodestar rate of $550, which is at the high end of attorney fees awards in San Bernardino County."  To be clear, the court's application of the *Ketchum* factors to the hourly rate did not—in and of itself—constitute error.  (See *Ketchum*, *supra*,

---

[2] Caldera also argues that the trial court erred by reducing the number of lodestar hours from 1650.95 to 1412.85.  But the court's overall reduction in hours was the sum of several discreet discretionary rulings.  For instance, the court granted "50 hours for opposing the MSJ, a reduction of 17.75 hours for Nevell."  A trial court is generally in the best position to make these kinds of discretionary judgments.  (See *PCLM Group Ins. v. Drexler* (2000) 22 Cal.4th 1084, 1096.)  As to the reduction of lodestar hours, we do not find an abuse of the court's discretion.

24 Cal.4th at pp. 1132-1136 [the contingency adjustment may be made at the lodestar phase of the court's calculation or by applying a multiplier, but not both].) But based on the court's approach, we cannot determine exactly what increase to the hourly rate the court applied in light of the *Ketchum* factors it had appropriately acknowledged (although the total attorney fee award was manifestly inadequate based on the court's error in failing to apply the higher out-of-town-rate as previously discussed).

To conclude and reiterate, as far as the loadstar, we direct the trial court on remand to set the hourly rate "based on counsel's 'home' market rate." (*Horsford*, *supra*, 132 Cal.App.4th at p. 399.) And because the court will be determining the lodestar based on counsel's home market rate rather than a local rate, the court's ultimate ruling on attorney fees will be more easily understood if the court recognizes the *Ketchum* factors through the use of a multiplier rather than by an adjustment of the lodestar. Finally, the total attorney fee award must support the purposes of the FEHA, consistent with the court's exercise of its discretion.

## III

## DISPOSITION

The trial court's order granting attorney fees is reversed. The trial court is directed to enter a new order consistent with the holding of this opinion.

Caldera is awarded his costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

IKOLA, J.

12