Filed 1/28/21  Chapman v. Hyundai Motor America CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RICHARD E. CHAPMAN, JR., | |
| Plaintiff and Appellant, | A158279 |
| v. | |
| HYUNDAI MOTOR AMERICA, | (Solano County |
| Defendant and Respondent. | Super. Ct. No. FCS047403) |

Richard E. Chapman, Jr. (Chapman) appeals from an order awarding him attorney fees as the prevailing party under the Song-Beverly Consumer Warranty Act (Song-Beverly Act; Civ. Code, § 1790, et seq.) after he accepted a settlement offer under Code of Civil Procedure section 998 (section 998). Chapman contends the court erred in denying recovery of attorney fees he incurred for services rendered after an earlier section 998 offer.  We will reverse the order and remand for further proceedings.

1

## I. FACTS AND PROCEDURAL HISTORY

### A. Chapman's Hyundai Sonata

Chapman purchased a new 2011 Hyundai Sonata in June 2011 for $37,536.20. The vehicle was manufactured and distributed by respondent Hyundai Motor America (HMA), which provided an express written warranty.

After driving the car for a year and less than 13,000 miles, the vehicle began to show electrical problems. Chapman gave HMA several chances to make repairs. The vehicle later exhibited severe engine problems, resulting in the engine shutting down and smoke emanating from the vehicle; the vehicle remained at the repair facility for 44 days while repair technicians removed the engine and transmission and installed a new engine. In all, Chapman took the vehicle in for repairs and recalls 10 times in a period of just over three years, but problems persisted.

### B. Pre-Litigation Negotiations

Chapman contacted HMA customer service on November 4, 2015 and requested that HMA repurchase the vehicle. Six weeks later, HMA made an offer that Chapman contends was invalid under the Song-Beverly Act because it deducted improper amounts for mileage, "Hyundai ESP," and "GAP." Chapman rejected the offer and contacted The Knight Law Group, LLP, to represent him.

### C. Litigation

Chapman filed a lawsuit against HMA on July 20, 2016, alleging willful violations of the Song-Beverly Act and the federal Magnuson-Moss Warranty Act (15 U.S.C. § 2301 et seq.). He sought damages, rescission, civil penalties, attorney fees, and other relief.

HMA answered the complaint, denying Chapman's allegations and asserting affirmative defenses. HMA also filed a notice of removal to federal court.

### 1. First 998 Offer Rejected

In August 2016, HMA served Chapman with an Offer to Compromise pursuant to section 998 (First 998 Offer) and an Offer of Judgment pursuant to rule 68 of the Federal Rules of Civil Procedure. Both offers were in the amount of $10,415.77, plus $2,000 reimbursement for Chapman's down payment. Chapman rejected the offers.

### 2. Second 998 Offer Rejected

In late December 2016 or early January 2017, HMA served a Second Offer to Compromise pursuant to section 998 (Second 998 Offer) in the amount of $34,000, along with recovery of his attorney fees to date. Chapman rejected this offer. The case was remanded to superior court on or about January 4, 2017.

After the Second 998 Offer, Chapman served written discovery and counsel engaged in "meet and confer" efforts on discovery matters. In August 2017, HMA took Richard and Kimberly Chapman's depositions. A mediation session was held in September 2017, but Chapman did not appear in person (due to the failure of counsel to instruct him to do so) and the case did not settle.

### 3. Third 998 Offer Rejected

In October 2017, HMA served a Third Offer to Compromise pursuant to section 998 (Third 998 Offer) for $50,000 plus recovery of his attorney fees. Chapman rejected the offer.

In February 2018, Chapman filed a motion to amend his complaint by adding causes of action for fraudulent inducement.

### 4. Fourth 998 Offer Accepted

The parties attended a vehicle inspection on March 14, 2018. That same day, while Chapman's motion to amend his complaint was pending, HMA made a Fourth Offer to Compromise under section 998 in the amount of $120,372 (Fourth 998 Offer). The Fourth 998 Offer allowed Chapman to seek fees and costs by motion if the parties could not agree on the amounts. Chapman accepted the offer on April 17, 2018.

### 5. Chapman's Motion for Attorney Fees

As prevailing party pursuant to the terms of the Fourth 998 Offer, in December 2018 Chapman filed a motion to recover his attorney fees and costs pursuant to Civil Code section 1794, subdivision (d) of the Song-Beverly Act. Specifically, he sought attorney fees in the amount of $49,835 with a lodestar enhancement of 0.5, for a total of $74,752.50, along with costs and expenses in the amount of $8,396.38.

Chapman's motion was supported by declarations from counsel and exhibits detailing the basis for the requested fees. Declarations from Chapman's attorneys—at the Knight Law Group, LLP and associated counsel at The Altman Law Group—explained the experience and skill of counsel and their hourly rates. Attached as exhibits to those declarations were records of services provided by each law firm, setting forth the work, time spent, hourly rates, and fees incurred. According to these records, Knight Law Group, LLP generated fees of $29,022.50 and The Altman Law Group generated fees of $20,812.50, for a total of $49,835. Noteworthy for this appeal, these fees included amounts for services rendered after the Second 998 Offer in January 2017, in connection with discovery, a case management conference, the motion to amend the complaint, and the motion for attorney fees and costs.

HMA opposed the attorney fees motion on several grounds. First, HMA contended that Chapman's counsel was seeking a double recovery of its fees, because the statutory attorney fees would be "on top of an undisclosed contingency percentage" Chapman would have to pay counsel pursuant to his retention agreement. Although HMA did not have a copy of Chapman's retention agreement, it presented evidence that Knight Law Group, LLC was formerly the law firm of O'Connor & Mikhov, which used a retention agreement that entitled the firm to 40 percent of any damages recovered above the amount for the vehicle (including civil penalties). HMA also presented evidence that a class action lawsuit had been filed against the firm by a former client, who alleged that the firm used fee agreements that unlawfully gave the firm a contingency fee in addition to its hourly fees when "additional damages" were recovered (*Osequera v. O'Connor & Mikhov LLP,* Los Angeles County Superior Court Case No. BC591708). (See also *Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 510 (*Hanna*) [retainer agreement produced by O'Connor & Mikhov provided that the firm would "receive its hourly rate for all time expended on the litigation . . . [and] also be entitled to a bonus equal to 40 percent of all additional damages recovered"].) In addition, HMA presented an order in another superior court case, which denied a plaintiff recovery for attorney fees unless attorney Mikhov disclosed amounts received or expected to be received from his client under the retainer agreement. HMA argued that, since Chapman's counsel presumably stood to receive $33,134 under the retention agreement, it would not be reasonable to award counsel an additional $49,835 based on their hourly rates. HMA urged the court to require Chapman's lawyers to disclose, perhaps in camera, their fee agreement with Chapman.

5

HMA next argued that Chapman's counsel had violated the parties' written settlement agreement by filing the motion for attorney fees without first submitting a statement for fees to HMA's counsel. On this basis, HMA argued, the attorney fees motion should be denied entirely.

In addition, HMA attacked the fee request as to amounts for certain services: $11,375 for services that were rendered after the Fourth 998 Offer was made; $7,705 in fees (and $525 in costs) for the mediation, which was unproductive due to the failure of Chapman's attorneys to instruct Chapman to attend the mediation (for which counsel was sanctioned by the court); $1,770.50 because the case was overstaffed with 11 attorneys and a paralegal; and $4,752.50 for other excessive billings. Finally, HMA argued that counsel's hourly rates were excessive. By HMA's calculation, even if Chapman could show that the attorney fees requested were not duplicative of the contingency fee presumably contained in the retention agreement, the court should award no more than $16,967.50, reduced by a 0.2 lodestar multiplier.[1]

The court issued a tentative ruling that awarded Chapman attorney fees of just $11,425, concluding that Chapman had not met his burden of showing that "any fees incurred following the settlement offer for $34,000

---

[1] HMA also pointed to Chapman's deposition testimony that he had not seen or known of HMA's section 998 offer that offered to pay $34,000 to repurchase the vehicle plus compensation for attorney fees. Besides the serious implications this would have under rule 1.4.1 of the California Rules of Professional Conduct, a failure to advise Chapman of the Second 998 Offer could raise questions as to whether Chapman would have accepted the offer and, therefore, the reasonableness of continuing to litigate the case. Chapman counters that his attorney's records indicate that counsel reviewed the Second 998 Offer on January 3, 2017 and had a "communication with client" on January 5, 2017. The court made no factual finding in this regard, and we therefore do not consider the matter further.

made on or about January 3, 2017" were reasonably necessary to the conduct of the litigation and reasonable in amount. Specifically, the court explained, Chapman had "not demonstrated that it was reasonable to continue to prosecute his action after [HMA] offered to settle the action for $34,000, which apparently included attorneys' fees by motion. . . [Chapman's] only reason for rejecting the offer is a conclusory assertion that it was 'inadequate' without making any effort to articulate in what manner the offer was inadequate. [Citation] Instead, based on the facts presented to the Court, it seems that an offer of restitution of $34,000 would have exceeded statutory requirements. The 'actual price paid or payable by the buyer,' excluding 'nonmanufacturer items installed by a dealer of the buyer,' was $37,536.20. [Citations.] This amount could legally be reduced in an 'amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility.' [Citation] [Chapman's] counsel avers that the vehicle began exhibiting problems after 'less than 13,000 miles.' [Citation] Employing 13,000 miles in the statutory formula, [HMA] was entitled to reduce the restitution amount by $4,066.42. [¶] Upon reviewing counsel's billing records, [Chapman] incurred attorneys' fees of $11,425 prior to the January 3, 2017 settlement offer. All other attorneys' fees incurred were not reasonable." HMA had not made this specific argument.

At the ensuing hearing on March 21, 2019, Chapman's lawyer argued that the court appeared to believe Chapman should have accepted the $34,000 settlement offer, but Chapman was entitled to pursue civil penalties and, in fact, counsel ultimately achieved an excellent result. The court rejected counsel's characterization of the tentative ruling, explaining that the offer of $34,000 in restitution would have exceeded statutory requirements,

7

Chapman had the burden of showing it was reasonable and necessary to continue the litigation beyond that point, Chapman offered only a conclusory assertion that the $34,000 proposal was inadequate, and the court did not have enough information to order more fees than it did. Chapman's attorney pointed out that Chapman was actually entitled under the statute to recover three times the $37,556 purchase price, not $34,000.

HMA reiterated that Chapman's attorneys should have to disclose to the court what they received under the contingency agreement. The court adopted the tentative ruling as its order.

6. <u>Cost Memorandum and HMA's Motion to Strike or Tax Costs</u>

Chapman filed a cost memorandum, and HMA filed a motion to strike or tax those costs. At a hearing on the motion on May 2, 2017, HMA's counsel again insisted that Chapman divulge how much counsel was receiving in fees and costs under the retention agreement, prompting the court to ask Chapman's attorney why he could "continue to hide from the Court the information about how much in fees you've already received when the court is now asked to set, quote, 'reasonable fees' or 'reasonable costs.'" Counsel replied that there was no requirement to disclose the privileged retention agreement, explaining that the court's obligation under the statute was to determine reasonable fees under the lodestar method, and "[w]hether the plaintiff had an issue with how their fees are portioned or not [would be] between the plaintiff and their attorney." When questioned further as to fees and costs to be received under the retention agreement, counsel conceded "there may be an agreement in their retainer" for fees and costs in addition to what the court orders.

The court then added the following to its earlier order on the fee motion: "As further grounds for the Court's ruling on this fee motion, the

8

Court finds it cannot rationally calculate what are reasonable fees and costs herein without knowing what fees and costs the client/plaintiff has paid or is or will be obligated to pay under plaintiff's retainer agreement with his counsel." (The court also adopted its tentative ruling on the motion to tax costs—an order not at issue in this appeal.)

### 7. Written Order on Attorney Fees Motion

Chapman submitted a proposed written order to the court, which the court issued on May 7, 2019. The parties soon realized, however, that the submitted order had not included the court's second basis for its decision, which the court had announced at the hearing on the motion to tax costs. The parties then submitted a stipulated order setting forth both bases for the court's ruling, incorporating the language of the court's tentative order (that Chapman had not shown the reasonableness of fees incurred after the Second 998 Offer) as well as the court's language announced at the later hearing (that the court would need to know the amounts counsel would receive under the retainer agreement); the court signed and issued that written order on May 28, 2019. This appeal followed.

## II. DISCUSSION

### A. Appealability

As HMA points out, Chapman agreed to the entry of the stipulated order that is the subject of this appeal. A stipulation is usually binding unless illegal or contrary to public policy. (*Hehr v. Swendseid* (1966) 243 Cal.App.2d 142, 149.) More specifically, a party who stipulates to entry of a judgment generally cannot appeal from that judgment. (*Delagrange v. Sacramento Sav. & Loan Assn.* (1976) 65 Cal.App.3d 828, 831; *Papadakis v. Zelis* (1991) 230 Cal.App.3d 1385, 1387—1388.) An exception arises, however, when " 'consent was merely given to facilitate an appeal following adverse

determination of a critical issue.' " (*City of Gardena v. Rikuo Corp.* (2011) 192 Cal.App.4th 595, 600; *Magaña Cathcart McCarthy v. CB Richard Ellis, Inc.* (2009) 174 Cal.App.4th 106, 120–121.)

Here, Chapman's stipulation was not to the content of the order from which he appeals, but to the replacement of the initial incomplete order with a new order that accurately reflected the court's intended disposition as articulated at the hearing. Contrary to HMA's argument, there is no basis for inferring that Chapman relinquished his right to appeal the court's calculation of attorney fees; if anything, Chapman's agreement to entry of the order facilitated appellate review.

B. <u>Merits</u>

The Song-Beverly Act requires manufacturers and retail sellers of new cars to extend an implied warranty of merchantability to the buyer that the car is fit for the ordinary purposes for which cars are used. (Civ. Code, §§ 1791.1, subd. (a)(2), 1792.) It also regulates how any express warranties are created and enforced. (Civ. Code, §§ 1793.1, 1793.2, 1793.3, 1795.)

Under the Song-Beverly Act, "[i]f the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a *reasonable number of attempts*, the manufacturer shall either *promptly replace* the new motor vehicle . . . *or promptly make restitution* to the buyer in accordance with subparagraph (B)." (Civ. Code, § 1793.2, subd. (d)(2). Italics added.) The buyer has the right to choose restitution instead of replacement. (*Ibid.*)

Pursuant to subdivision (d)(2)(B) of the statute, restitution shall be "in an amount equal to the actual price paid or payable by the buyer, including any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and

10

including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus any incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer." (Civ. Code, § 1793.2, subd. (d)(2)(B).)

If the manufacturer or retail seller "fail[s] to comply" with any "implied or express warranty," the car buyer has a right to sue. (Civ. Code, § 1794, subd. (a).) The buyer's damages include the replacement or reimbursement set forth in Civil Code section 1793.2, subdivision (d), described ante. (Civ. Code, § 1794, subd. (b).) *In addition*, the buyer may recover a civil penalty if the manufacturer's or retail seller's failure to comply with the Act was willful. (Civ. Code, § 1794, subd. (c).)

The Song-Beverly Act further entitles the buyer to recover reasonable attorney fees. Civil Code section 1794, subdivision (d) provides: "If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including *attorney's fees based on actual time expended, determined by the court to have been reasonably incurred* by the buyer in connection with the commencement and prosecution of such action." (Italics added.) By this provision, "our Legislature has provided injured consumers strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible." (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 994 ["the prospect of having to pay attorney fees even if one wins a lawsuit can serve as a powerful disincentive to the unfortunate purchaser of a malfunctioning automobile"].)

To determine the attorney fees to be awarded under the Song-Beverly Act, the trial court must apply the lodestar method. (E.g., *Reynolds v. Ford*

11

*Motor Company* (2020) 47 Cal.App.5th 1105, 1112 (*Reynolds*); *Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 817–821; see generally *Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 448–449 [lodestar method applies to statutory attorney fees award unless the statute applies otherwise].)

Under the lodestar method, the court calculates a lodestar figure by multiplying a reasonable number of hours worked by a reasonable hourly rate; the court may then adjust that lodestar by applying a multiplier based on factors such as the novelty and difficulty of the issues, the skill in presenting them, the extent to which the nature of the litigation precluded other employment, and the contingent nature of the fee award. (*Reynolds, supra*, 47 Cal.App.5th at p. 1112; see *Nightingale v. Hyundai Motor America* (1994) 31 Cal.App.4th 99, 104.)

Here, the court awarded Chapman recovery of attorney fees in the amount of $11,425 (as compared to the $49,835 plus multiplier requested), corresponding to services rendered only through the date of the Second 998 Offer, on two grounds: (1) Chapman had not "demonstrated that it was reasonable to continue to prosecute his action after Defendant offered to settle the action for $34,000, which apparently included attorneys' fees by motion;" and (2) the court could not "rationally calculate what are reasonable fees and costs herein without knowing what fees and costs the client/plaintiff has paid or is or will be obligated to pay under plaintiff's retainer agreement with his counsel." We examine each ground.[2]

---

[2] Section 998 does not in itself provide a basis for the trial court's order. Under section 998, subdivision (c)(1), a plaintiff who fails to accept a section 998 offer and does not obtain a more favorable judgment cannot recover postoffer costs. Here, the judgment Chapman obtained *was* more favorable than the Second 998 Offer.

12

1. <u>Reasonableness of Fees After $34,000 Settlement Offer</u>

The court denied Chapman recovery for fees incurred after HMA's $34,000 offer because Chapman had not proven those fees were reasonably incurred. Put slightly differently, while the court accepted the proposition that the requested fees were reasonable up to the point of the $34,000 offer, it believed Chapman had not presented evidence of reasonableness after that point. The court did not take issue with the reasonableness of any specific time entries or counsel's hourly rates. Instead, it concluded that Chapman had not shown the reasonableness of *continuing to litigate* after the $34,000 offer because his "only reason for rejecting the offer is a conclusory assertion that it was 'inadequate' without making any effort to articulate in what manner the offer was inadequate," and "based on the facts presented to the Court, it seems that an offer of restitution of $34,000 would have exceeded statutory requirements."

As Chapman pointed out at the hearing, however, the Song-Beverly Act not only mandated payment of $34,000 in restitution, but also subjected HMA to potential liability for civil penalties—up to two times his actual damages—if HMA's failure to comply with the Song-Beverly Act was willful. (Civ. Code, § 1794, subd. (c).) While Chapman's counsel could have more clearly articulated the insufficiencies of the $34,000 offer or the evidence that HMA's violation was willful, there was more evidence in the record than his conclusory assertion that the $34,000 offer was "inadequate." Counsel's declaration averred that HMA failed to comply with the Song-Beverly Act because it did not repair his vehicle or provide a repurchase or restitution as set forth in the statute, and it did not respond to Chapman's purchase request for six weeks and even then, included improper terms. Chapman alleged in his complaint that these failures to comply with the statute were

13

willful, a proposition that could be established if HMA intentionally chose not to meet a known statutory obligation without a reasonable and good faith belief the obligation did not apply. (See *Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 185; *Lukather v. General Motors LLC* (2010) 181 Cal.App.4th 1041, 1051; CACI No. 3244.) His theory, on this point, is that the $34,000 should have been offered *before* the litigation. Furthermore, according to the billing summaries Chapman submitted to the court, attorney fees incurred after the Second 998 Offer included fees for defending HMA's depositions of Chapman and his wife, addressing HMA's discovery responses, and participating in a case management conference— none of which compel the conclusion that counsel was merely indulging in activities to run up fees. And after rejecting the Second 998 Offer and pursuing discovery and an amendment to the complaint that would have allegedly subjected HMA to punitive damages, counsel was able to persuade HMA to pay Chapman over $86,000 more than he would have received under the Second 998 Offer. Given HMA's ultimate decision to give Chapman 3.5 times the Second 998 Offer to resolve the case, it is difficult to see how all the work of Chapman's counsel after the Second 998 offer was unreasonable. (See *Hanna, supra,* 36 Cal.App.5th at pp. 507–508 [plaintiff in Song-Beverly case was entitled to recover attorney fees, incurred after reasonably rejecting a section 998 offer, in pursuit of evidence of willfulness needed to recover a civil penalty].) We also note that, in refusing to award fees for *any* services after the Second 998 Offer, the court awarded no fees as to the attorney fees motion that the court in part granted.

Thus, in finding that $34,000 exceeded what Chapman could recover, and that continued litigation was not shown to be reasonable and no fees should be awarded for services after the Second 998 Offer, the court

misapprehended either the law, the evidence, or both. Because the court's stated premise for its order was incorrect, we cannot presume the correctness of the order and will remand to the trial court for further consideration and an award of reasonable attorney fees consistent with applicable law. (See *569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 434 ["although the trial court has broad authority in determining the amount of reasonable legal fees, the award can be reversed for an abuse of discretion when it employed the wrong legal standard in making its determination"]; *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393 (*Horsford*) [a judicial decision, even if reasonable, is an abuse of discretion if it starts from a mistaken premise]; *Etcheson v. FCA US LLC* (2018) 30 Cal.App.5th 831, 841, 845 (*Etcheson*) ["when the record affirmatively shows the trial court's discretionary determination of fees pivoted on a factual finding entirely lacking in evidentiary support, the matter must be reversed with instructions to redetermine the award," and when the court states its reasons explicitly, we cannot infer its exercise of discretion rested on a different basis].)[3] We do not limit the court to a specific result, but it must examine the matter anew.

---

[3] The parties debate whether *Etcheson* applies. In *Etchesen*, the plaintiff rejected a section 998 offer, continued to litigate the issue of the defendant's willfulness in the hope of recovering a civil penalty, accepted a later section 998 offer, and sought attorney fees as the prevailing party under the Song-Beverly Act. The trial court found the first section 998 offer to be invalid, but nonetheless refused to allow recovery for attorney fees incurred after that offer because it believed the plaintiff should have accepted it. The court of appeal held that the court abused its discretion. (*Etcheson, supra*, 30 Cal.App.5th at pp. 842–846.) *Etcheson* is not directly on point, because the court here did not find HMA's Second 998 Offer invalid. The case nonetheless provides authority for reversing an order that was premised on an apparent misapprehension of the law or facts in the assessment of fees.

## 2. Reasonableness of Fees in Light of Retainer Agreement

As a second ground for denying Chapman's requested fees, the trial court asserted that it could not "rationally calculate what are reasonable fees and costs herein *without knowing what fees and costs the client/plaintiff has paid or is or will be obligated to pay under plaintiff's retainer agreement with his counsel.*" (Italics added.) Chapman did not address this ground directly in its opening brief in this appeal, and HMA contends the issue was therefore waived. However, the court's ruling on this point was erroneous as a matter of law, and we address it here to provide guidance for the court and parties on remand.

HMA defends the court's ruling by insisting that "[t]he trial court was entitled to consider [plaintiff's] retainer agreement in awarding [] fees." (Citing *Hanna, supra,* 36 Cal.App.5th at p. 509 [indicating the propriety of considering the retainer agreement but reversing the trial court's order because it misinterpreted the agreement]; *Horsford, supra,* 132 Cal.App.4th at p. 401 ["plaintiffs' counsel are not permitted to take contractual fees in addition to statutory fees"].) Chapman failed to provide the retention agreement or divulge its terms despite the court's inquiry, and even if the retention agreement is privileged, the information concerning the amount of fees counsel would receive is not. (*Los Angeles County Bd. Of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 297.)

The cases on which HMA relies, however, are not on point. *Hanna* ruled that an incorrect interpretation of a retainer agreement could not supplant the lodestar method, but it did not decide whether terms of a retainer agreement, even if correctly interpreted, may be used by the trial court to adjust an attorney fees award under the Song-Beverly Act. Likewise, *Horsford* stated that plaintiffs' counsel are not allowed to take contractual

16

fees in addition to statutory fees, but it did not hold that the trial court may reduce the lodestar by amounts counsel might obtain pursuant to a retention agreement; to the contrary, the court ruled, a departure from the lodestar method and resort to considerations of hypothetical contingency fees was an abuse of discretion. (*Horsford, supra*, 132 Cal.App.4th at p. 401; see also *Reynolds, supra*, 47 Cal.App.5th at p. 1115 [*Horsford* was commenting on the terms of the retention agreement in that case, not pronouncing a general principle that a statutory award must be offset against an amount the client owes to counsel under the retention agreement].)

Simply put, the trial court's job in awarding fees under the Song-Beverly Act is to apply the lodestar method by examining the reasonableness of the services rendered, time spent, and hourly rate. (Civ. Code, § 1794, subd. (d).) The statutory language invites an inquiry into whether fees were "reasonably *incurred*," not whether the fee award is reasonable in light of all other sources of attorney compensation. (*Ibid*., italics added.) To the extent counsel ends up with a potential double recovery (or unconscionable fees) from the combination of the statutory fee award and amounts to be paid from the settlement proceeds under a contingency fee agreement, it is a matter between the attorney and client. As *Horsford* stated: "If the contingency fee is *larger* than the statutory fee award, counsel is permitted to accept that fee, with a setoff for statutory fees received. If the contingency fee is smaller than the statutory fee, counsel must reimburse the plaintiff [client] from the statutory award for any amounts already paid by the client pursuant to the contingency contract." (*Horsford, supra*, 132 Cal.App.4th at p. 401.)

The recent opinion in *Reynolds*—involving the very law firms that represent Chapman in this matter—is on point. (*Reynolds, supra,* 47

17

Cal.App.5th at p. 1105.) In *Reynolds*, the plaintiff filed a motion for attorney fees under the Song-Beverly Act without disclosing the retention agreement or its terms; the defendant argued that counsel was not entitled to recover both a contingency fee under the retention agreement and statutory fees. The trial court awarded fees pursuant to the lodestar method, and the court of appeal affirmed. Under section 1794, subdivision (d), the court explained, the trial court is only tasked with calculating attorney fees based on actual hours expended that were reasonably incurred for the litigation, and making that determination yields an award that represents the reasonable value of services under the Song-Beverly Act. The contingency fee provisions of the retention agreement are irrelevant to that determination, and the court had no obligation to evaluate further whether the result under the lodestar method was inappropriate. (*Id*. at pp. 1113–1114.)

Contrary to HMA's urging, therefore, in deciding the amount of attorney fees to be awarded under the Song-Beverly Act, the trial court is not "acting in a role to protect the financial wellbeing of a litigant in the face of what appears to be a gross conflict of interest between [Chapman] and his counsel." That said, we also adopt the following observations pronounced in *Reynolds*: "In awarding attorney fees, the trial court is limited by the terms of subdivision (d) of section 1794, which 'controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer. What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the "reasonable attorney's fee" that a defendant must pay pursuant to a court order.' [Citation.] [¶] . . . [¶] *'[N]othing we say in this opinion . . . alters existing rules forbidding attorneys to charge or obtain unreasonable fees, or diminishes clients' established remedies if unreasonable fees are sought or exacted.* (See,

18

e.g., Bus. & Prof. Code, § 6200 et seq. [arbitration of attorney fees].)' "
(*Reynolds, supra,* 47 Cal.App.5th 1105 at pp. 1116, 1118. Italics added.)[4]

### III. <u>DISPOSITION</u>

The order is reversed. The matter is remanded for the trial court to award reasonable attorney fees consistent with this opinion. Appellant shall recover from respondent his costs on appeal.

---

[4] At oral argument, HMA contended that *Reynolds* was distinguishable because it dealt only with the standard for awarding fees under section 1794, subdivision (d), while in this case the section 998 offer that Chapman accepted had placed further limitations on the recovery of fees. The offer stated: "HMA is also willing to allow the Court to determine, in a noticed motion filed pursuant to Civil Code Section 1794(d), the reasonable and actually incurred amount of attorney's fees, expenses and costs in this matter." Since the issue was not briefed below or before us, and nothing in the record indicates the trial judge believed that the 998 offer limited the recovery of fees, we do not consider this argument.

_____

NEEDHAM, Acting P.J.

We concur.

_____

BURNS, J.

_____

SELIGMAN, J. *

*Chapman v. Hyundai Motor America* / A158279

_____

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.